UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOHN FREDERICK RUSSELL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> Acting Commissioner of Social ) <br> Security, ) <br> ) <br> Defendant. ) <br> ) | Case No. CV 14-3481 AJW <br><br> MEMORANDUM OF DECISION <br> AND ORDER |

    Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

    The parties are familiar with the procedural facts. [See JS 1]. In a November 2, 2012 written hearing decision that constitutes the Commissioner's final decision in this matter, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform work available in significant numbers in the national economy. [JS 1-2; Administrative Record ("AR") 21-29]. Therefore, the ALJ concluded that plaintiff was not disabled at any time through the date of his decision. [JS 2; AR 29-30].

///

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Medical opinion evidence**

Plaintiff contends that the ALJ erred in giving little or no weight to the opinions of the treating and examining physicians with respect to plaintiff's mental functional impairments.

The ALJ found that plaintiff had the following severe impairments: status post head injury with hemorrhage and subdural hematoma and craniotomy as a result of a serious brain injury in August 2009, hepatitis C and cirrhosis of the liver, alcohol dependence, right end-stage renal disease, and a cognitive disorder, not otherwise specified ("NOS"). [AR 24, 26]. The ALJ further found that plaintiff retained the RFC to perform light work with no climbing of ropes, ladders, scaffolds, ramps or stairs and no exposure to unprotected heights or moving machinery. Plaintiff also was limited to simple, repetitive tasks and would be "off task" 5% of the workday due to his symptoms. [AR 25].

In assessing plaintiff's mental functional capacity, the ALJ concluded that the opinion of plaintiff's treating primary care physician, Liem Ngo, M.D., was not reliable. [AR 37-38]. The ALJ said that he accepted the opinion of the Commissioner's consultative examining psychiatrist, Laura Luna, Ph.D. [AR 26].

Plaintiff submitted additional evidence to the Appeals Council, including treatment records from Los Angeles County-USC Medical Center ("LAC-USC") for the period May 18, 2011 through August 29, 2012,

2

prior to the ALJ's November 2012 hearing decision. The additional evidence includes treatment reports from Dr. Centeno, a "Psychiatric/Psychological Impairment Questionnaire" she completed on October 30, 2012. [See AR 5, 895-965]. The Appeals Council concluded that the additional evidence did not provide a basis for changing the ALJ's decision. [AR 1-2]. That evidence is part of the administrative record in this action and must be considered in determining whether the ALJ's decision is supported by substantial evidence in the record. Brewes v. Comm'r of Social Sec. Admin., 682 F.3d 1157, 1160, 1162-1163 (9th Cir. 2012).

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). A treating physician's opinion is entitled to greater weight than those of examining or nonexamining physicians because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual . . . ." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see, 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2).

If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r or Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tontapetyan, 242 F.3d at 1144, 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The record before the ALJ when he rendered his decision included a letter to plaintiff dated October 24, 2012 from Dr. Centeno at LAC-USC. [AR 894]. Dr. Centeno noted that plaintiff had undergone an initial psychiatric assessment on October 9, 2012 and had returned for follow-up on October 24, 2012. She stated that plaintiff's subjective symptoms and the examination findings demonstrated that he had "deficits in the areas of attention, immediate recall, orientation and calculation," and "significant deficits in executive functioning in the realm of organization, task planning, task completion and time management." [AR 894]. Dr. Centeno added that plaintiff's cognitive impairments "appear to be related to the Traumatic Brain Injury that [he] sustained in 2009 leading to right temporal subdural hematoma status post evacuation." [AR 894]. She noted that plaintiff's July 2012 CT scan of the head showed a "prior craniotomy with brain tissue loss

3

of the right temporal lobe," and that plaintiff's May 2011 EEG requested by the neurology department showed abnormalities "suggest[ing] epileptogenic focus in this areas with the presence of bifrontal slowing suggesting structural abnormality or functional abnormality in the bifrontal regions," findings that "are consistent with [plaintiff's] seizure disorder and cognitive deficits." [AR 894 (emphasis in original)]. Dr. Centeno recommended neuropsychological testing, occupational therapy, "close monitoring" by the neurology and psychiatry departments, and referrals to audiology for hearing loss, opthamology for vision impairment, neurology for a seizure disorder, hepatology for elevated liver enzymes, and compliance with anxiety medications and other medications. [AR 894].

      The ALJ did not specifically comment upon or reject Dr. Centeno's October 24, 2012 opinion as to plaintiff's functional deficits. As the Ninth Circuit recently emphasized, "an ALJ cannot in its decision totally ignore [the opinion of ] a treating doctor and his or her notes, without even mentioning them." Marsh v. Colvin, 792 F.3d 1170, 1172-1173 (9th Cir. 2015) (holding that the ALJ erred in failing to mention, or give specific and legitimate reasons for rejecting, a treating doctor's progress note stating that the claimant's impairment rendered her "pretty much nonfunctional," and reversing and remanding because the court could not "confidently conclude" that the ALJ's error was harmless) (citing Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion . . . he errs.")).

      Based on the record as a whole, including the additional treatment records submitted to the Appeals Council, this court cannot "confidently conclude" that the ALJ's error was "inconsequential to the ultimate nondisability determination" and "that no reasonable ALJ, when fully crediting the testimony, cold have reached a different disability determination." Marsh, 792 F.3d at 1173 (quoting Stout, 454 F.3d at 1055-1056); see generally Mcleod v. Astrue, 640 F.3d 881, 887-888 (9th Cir. 2011) (stating that "the same kind of 'harmless-error' rule that courts ordinarily apply in civil cases" applies in social security disability cases, and that "where the circumstances of the case show a substantial likelihood of prejudice" from an error, the error is not harmless).

      The record establishes that in May 2011, plaintiff presented to LAC-USC on a referral from Dr. Ngo for follow-up treatment for seizures and severe headaches. After undergoing imaging studies and a neurology evaluation, plaintiff was prescribed treatment and was referred to the psychiatry clinic. [AR 458-465, 914-946]. After his initial psychiatric assessment with Dr. Centeno on October 9, 2012, plaintiff began treatment at LAC-USC for diagnoses of cognitive disorder secondary to his 2009 traumatic brain injury and

anxiety NOS. He was prescribed medication for anxiety, started on occupational therapy to improve cognitive functioning, and given referrals to other medical specialties. [AR 899-919]. On October 30, 2012, Dr. Centeno completed a "Psychiatric/Psychological Impairment Questionnaire" reiterating the findings and conclusions set forth in her October 24, 2012 letter and concluding that plaintiff had marked or moderate limitations in most work-related mental functional abilities. She found that plaintiff had marked limitations in the ability to, among other things, remember work-like procedures; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without supervision; complete a normal work-week without interruptions from psychologically-based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. [AR 956-957]. Dr. Centeno further found that plaintiff had moderate limitations in the ability to understand, remember, and carry out one- or two-step instructions; work in proximity with others without being distracted by them; make simple work-related decisions; and accept instructions from, and respond appropriately to criticism from, supervisors. [AR 956-957]. Dr. Centeno opined that plaintiff like would be absent from work more than three times a month, and that the symptoms and limitations she described may have been present since 2009. [AR 959].

On November 14, 2012, plaintiff underwent psychological testing performed by Philip O'Donnell, Ph.D. [AR 961]. Dr. O'Donnell noted that plaintiff's IQ score was 69, corresponding to the second percentile for adults of his age, and that plaintiff's neuropsychological functioning score placed him below the first percentile, "showing clear impairment in all areas of cognitive functioning (language, visu[al-]spatial skills, attention and memory"). Dr. O'Donnell diagnosed cognitive disorder secondary to traumatic brain injury, chronic; alcohol dependence in sustained full remission; and borderline intellectual functioning. He said that plaintiff's test results indicated below-average intellectual abilities and impairments "across several cognitive domains lead[ing] to deficits in daily functioning." [AR 961].

On July 29, 2013, Dr. Centeno wrote a letter to plaintiff "certify[ing] that [he had] been seen" at the LAC-USC psychiatric clinic since October 9, 2012 and had last been seen on April 23, 2013. Dr. Centeno echoed all of Dr. O'Donnell's findings and conclusions regarding plaintiff's psychological test results and cognitive deficits. [AR 964].

In light of the record as a whole, the ALJ's failure to explicitly reject Dr. Centeno's October 24,

2012 and support that rejection with specific, legitimate reasons supported by the record created a substantial likelihood of prejudice to plaintiff and therefore constitutes reversible error. In these circumstances, the appropriate remedy is to reverse the denial of benefits and to remand the matter for further administrative proceedings so that the ALJ may evaluate the medical evidence and the record as a whole consistent with this memorandum of decision and issue a new hearing decision containing appropriate findings. See Marsh, 792 F.3d at 1173 (observing that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court," and holding that "where the ALJ did not even mention" a treating physician's disability opinion, the error was not harmless, and "it is most appropriate to . . . remand with instructions to the district court to remand to the ALJ, and specifically to invite the ALJ to comment on [the treating physician's] medical opinions and records").[1]

**Conclusion**

For the reasons described above, the Commissioner's decision is **reversed**, and the case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED**.

September 29, 2015

_____
ANDREW J. WISTRICH
UNITED STATES MAGISTRATE JUDGE

---

[1] This disposition makes it unnecessary to consider plaintiff's remaining contention that the ALJ's credibility finding is erroneous. On remand, the ALJ should reevaluate the credibility of plaintiff's subjective complaints in light of a proper assessment of the medical evidence and the record as a whole.